Of Counsel:
ASHFORD & WRISTON
A Limited Liability Law Partnership, LLP

CUYLER SHAW    1413-0
KEVIN HERRING   6722-0
MIRANDA TSAI    8308-0
Alii Place, Suite 1400
1099 Alakea Street
P.O. Box 131
Honolulu, Hawaii 96810
Telephone: (808) 539-0400
Email: cshaw@awlaw.com

Attorneys for
RONALD K. KOTOSHIRODO, TRUSTEE

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>JAMES WILLIAM LULL,<br><br>             Debtor. | CASE NO. 06-00898<br>(Chapter 7) |
| RONALD K. KOTOSHIRODO, CHAPTER 7 TRUSTEE<br><br>             Plaintiff<br><br>             v.<br><br>JEFFREY L. ULDRICKS, THE PATTI K. IRVINE REVOCABLE TRUST DATED DECEMBER 21, 1992, THERESA LULL, JOHN and MARY DOES 1-20 and DOE PARTNER-SHIPS, CORPORATIONS or OTHER ENTITIES 1-20,<br><br>             Defendants | ADV. PROC. NO. 07-90017<br><br>FIRST AMENDED COMPLAINT TO SET ASIDE TRANSFERS OF DEBTOR'S INTEREST IN (1) PROPERTY LOCATED AT 4030 PALI MOANA PLACE, KILAUEA, KAUAI AND (2) PROPERTY LOCATED AT 3557 ANINI ROAD, KILAUEA, KAUAI; SUMMONS AND NOTICE OF STATUS OF CONFERENCE IN AN ADVERSARY PROCEEDING |

# FIRST AMENDED COMPLAINT TO SET ASIDE TRANSFERS OF DEBTOR'S INTEREST IN (1) PROPERTY LOCATED AT 4030 PALI MOANA PLACE KILAUEA, KAUAI AND (2) PROPERTY LOCATED AT 3557 ANINI ROAD, KILAUEA, KAUAI

Plaintiff, RONALD K. KOTOSHIRODO, TRUSTEE ("Trustee"), by and through his attorneys undersigned, for complaint against JEFFREY L. ULDRICKS ("Uldricks"), THE PATTI K. IRVINE REVOCABLE TRUST DATED DECEMBER 21, 1992 ("Irvine Trust"), and THERESA LULL, alleges as follows:

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 151, 28 U.S.C. § 157, and 28 U.S.C. § 1334(b). The proceeding is brought pursuant to 11 U.S.C. §§ 547, 548, 550 and 551, and the Federal Rules of Bankruptcy Procedure, Rule 7001(1) and (7).

2. This is a "core" proceeding under 28 U.S.C. § 157(b)(2)(F), (K) and/or (O). To the extent that the proceeding is determined to contain non-core matters, the Trustee consents to the entry of final orders, judgments and decrees by the Bankruptcy Court.

3. This bankruptcy case commenced through a voluntary petition filed by the Debtor JAMES WILLIAM LULL ("Debtor") on December 8, 2006.

4. The Trustee is the duly appointed and acting Chapter 7 trustee in this bankruptcy case.

5. On information and belief, Uldricks resides in the State of California. At all times material hereto, Uldricks owned and controlled U.S. Financial Mortgage Corp. ("U.S. Financial) and directed and supervised its Kauai branch operations. At all times material hereto, U.S. Financial employed Debtor as its Kauai branch manager.

6. On information and belief, Patti Bishop, trustee of the Irvine Trust, resides in the State of Florida and the situs of the Irvine Trust is also there.

7. On information and belief, Theresa Lull (a) has been Debtor's spouse at all times relevant herein, and (b) currently resides in the State of Oregon.

8. DOE Defendants are individuals, partnerships, corporations or other entities, currently not identified, who may have directly or indirectly received avoidable transfers of Debtor's interest in the Duffy Residence or the Anini Road Residence or who may otherwise have an interest in the subject matter hereof.

## Count I – The Duffy Residence

9. Plaintiff realleges and incorporates by this reference the allegations contained in paragraphs 1 through 8 above.

10. On or about June 8, 2004, Debtor loaned the sum of $250,000 to Darda B. Hollands, Richard Duffy and Bonnie Duffy (collectively "Duffy").

11. Debtor's loan to Duffy was evidenced by a Note dated June 8, 2004 (the "Note").

12. The Note was secured by a Real Property Mortgage dated June 8, 2004 (the "Second Mortgage"), mortgaging Duffy's right, title and interest in a residence situated at 4030 Pali Moana Place, Unit #3, Kilauea, Hawaii ("Duffy Residence"). The Mortgage was recorded in the Bureau of Conveyances of the State of Hawaii (the "Bureau") on June 24, 2004 as Document No. 2004-127336.

13. On or about June 26, 2003, Duffy's predecessor-in-interest as owner of the Duffy Residence mortgaged the Duffy Residence to Integrity Funding Group Inc. to secure a loan in the amount of $1,920,000. This mortgage encumbered the Duffy Residence at the time Duffy mortgaged the same to secure the Note to Debtor so that the mortgage to secure Debtor's $250,000 loan was a second mortgage. The June 26, 2003 mortgage is hereinafter referred to as the "First Mortgage". The First Mortgage was recorded in the Bureau on June 26, 2003 as Document No. 2003-136719. On information and belief, the First Mortgage continues to encumber the Duffy Residence as of the date hereof.

14. On or about July 12, 2004, Debtor assigned the Note and Second Mortgage to Uldricks by Assignment of Mortgage recorded in said Bureau on August 24, 2004 as Document No. 2004-158764.

15. Although Debtor assigned the Note and Second Mortgage to Uldricks, on information and belief, pursuant to an agreement between Debtor and Uldricks,

either Debtor retained a 50% interest in said Note and Second Mortgage or Debtor later re-purchased a 50% interest in said Note and Second Mortgage from Uldricks.

16. On or about January 7, 2005, Uldricks commenced non-judicial foreclosure proceedings with respect to the Second Mortgage against the Duffy Residence because of Duffy's default in making the monthly payments on the First Mortgage and the Second Mortgage.

17. On or about June 17, 2005, Uldricks acquired title to the Duffy Residence, subject to the First Mortgage, by purchasing the same at a public auction noticed and conducted as part of the above-described foreclosure proceeding.

18. Although Uldricks purchased and took title to the Duffy Residence, he held such title as trustee for himself and Debtor as 50/50 co-owners of the residence.

19. On or about July 25, 2005, Debtor executed a Loan and Security Agreement ("Security Agreement") under which Debtor purported to grant Irvine Trust a lien or security interest in his 50% interest in the Duffy Residence to secure a debt owed by the Debtor to Irvine Trust in the amount of $3 million.

20. The Security Agreement was negotiated and signed by Uldricks in his capacity as "authorized representative" of the Irvine Trust.

382710.01

5

21. By letter dated August 22, 2006, Uldricks' attorney, Mark Bernstein, confirmed to Irvine Trust that Debtor owned a 50% interest in the Duffy Residence subject to the First Mortgage, and subject also to a balancing of accounts between co-owners Uldricks and Debtor.

22. On or about October 6, 2006, the Security Agreement was recorded in the Bureau as Document No. 2006-184072.

23. Under 11 U.S.C. § 547(e)(1)(A) and/or (B) and (e)(2) and for purposes of 11 U.S.C. § 547, the pledge, transfer and/or mortgage of Debtor's 50% interest in the Duffy Residence to Irvine Trust effected by the Security Agreement was effective, if at all, as of the date the Security Agreement was recorded in the Bureau.

24. The transfer of Debtor's interest in the Duffy Residence was a transfer:

    (a) To or for the benefit of a creditor, i.e. the Irvine Trust;

    (b) For or on account of an antecedent debt owed by Debtor to Irvine Trust before such transfer was made;

    (c) Made while Debtor was insolvent;

    (d) Made within ninety (90) days before the date of filing of Debtor's bankruptcy petition; and

(e) That would enable Irvine Trust to receive more than Irvine Trust would receive if the case were a case under Chapter 7, the transfer had not been made, and Irvine Trust received payment of such debt pursuant to the provisions of Chapter 7.

25. Pursuant to 11 U.S.C. §§ 547 and 551, or pursuant to other avoidance powers granted the Trustee under the Bankruptcy Code, the Trustee is entitled to avoid any lien or security interest in and to the Duffy Residence granted by Debtor to Irvine Trust under the Security Agreement and to preserve the same for the benefit of the estate.

## Count II – The Anini Road Residence

26. Plaintiff realleges and incorporates by this reference the allegations contained in paragraphs 1 through 25 above.

27. Commencing in or about 2001 and continuing at all times to the date of Debtor's petition herein, Debtor conducted a Ponzi scheme or other fraudulent scheme with actual intent to defraud his creditors. Between 1994 and 2006, Debtor served as Kauai branch manager for U.S. Financial, a mortgage banking company with offices in Hawaii and several western states. Debtor used his position as U.S. Financial branch manager to solicit loans from various investors based on Debtor's representations that (a) the funds loaned would be re-loaned by Debtor or U.S. Financial in various short-term or bridge loans or in other specified investments,

(b) that the investor would earn a favorable rate of interest and return on the investor's loan, and (c) that U.S. Financial was committed to making longer term loans to the short-term or bridge loan borrowers, the proceeds of which would be used to repay the investor. In fact, Debtor/U.S. Financial did not re-loan or invest the funds loaned for the purposes represented, or if Debtor did, he did not repay the funds in the timeframe promised, but instead diverted such loaned funds for Debtor's personal use and purposes and to make interest and other payments to earlier investors in the scheme. As of the date hereof, a total of approximately $52.8 million in claims has been filed against the bankruptcy estate, the bulk of such claims representing general unsecured claims filed by investors in Debtor's fraudulent scheme.

28. On or about October 27, 2004, Debtor purchased a residence at 3557 Anini Road, Kilauea, Kauai, Hawaii ("Anini Road Residence").

29. Debtor caused title to the Anini Road Residence to be taken in the names of himself and his wife, Theresa Lull, as tenants by the entirety, with actual intent to hinder, delay and/or defraud his creditors and in connection with and to perpetuate the above-described Ponzi scheme. In the alternative, Debtor received less than a reasonably equivalent value in exchange for the transfer of the Anini Road Residence to Teresa Lull, was insolvent on the date the transfer was made

and/or intended to incur debts that would be beyond the Debtor's ability to pay as such debts matured.

30. On information and belief, the Anini Road Residence was purchased for $3.45 million.

31. All or substantially all of the funds which Debtor used to purchase the Anini Road Residence were:

(a) fraudulently obtained from investors in Debtor's Ponzi scheme; and/or

(b) obtained with the assistant of Uldricks and/or U.S. Financial, each of which knew or should have known of Debtor's fraudulent scheme and each of which supported and/or facilitated such scheme.

32. Any interest of Debtor's wife, Theresa Lull, in the Anini Road Residence is held subject to a constructive trust in favor of the creditors of the bankruptcy estate.

33. $2,242,500 of the purchase price for the Anini Road Residence was obtained from U.S. Financial and an additional $1 million from the Irvine Trust. The balance of the funds, on information and belief, were obtained from other lenders to/investors in Debtor's Ponzi scheme.

34. Repayment of the $2,242,500 obtained from U.S. Financial to purchase the Anini Road Residence was secured by a first mortgage on the Anini

Road Residence, and repayment of the $1 million obtained from the Irvine Trust was evidenced by Debtor's promissory note dated October 20, 2004 and secured by a second mortgage on the Anini Road Residence.

35. The first mortgage was recorded in the Bureau of Conveyances on November 4, 2004 as Document No. 2004-223773 ("First Mortgage – Anini Road"). The second mortgage was also recorded in the Bureau on November 4, 2004 as Document No. 2004-223774 ("Second Mortgage - Anini Road").

36. By Loan and Security Agreement executed by Debtor on or about July 25, 2005 (herein referred to as "Security Agreement"), Debtor purported to further mortgage the Anini Road Residence by agreeing with Irvine Trust that the Second Mortgage - Anini Road would collateralize not only the $1 million loan from Irvine Trust which Debtor used to purchase the residence, but also $2 million in additional loans which Irvine Trust had previously made to Debtor or made to Debtor contemporaneously with Debtor's execution of the Security Agreement.

37. Although the Security Agreement was executed by Debtor, it was not executed by Defendant Theresa Lull.

38. The Security Agreement was recorded in the Bureau on October 6, 2006 as Document No. 2006-184072.

39. The purported further mortgage by Debtor of his interest in the Anini Road Residence under the Security Agreement failed because the Anini Road

Residence was held by Debtor and Theresa Lull as tenants by the entirety and the Security Agreement was not executed by Theresa Lull.

40. In the alternative, the further mortgage of Debtor's interest in the Anini Road Residence effected by the Security Agreement, if any, was a transfer:

    (a) To or for the benefit of a creditor, i.e. the Irvine Trust;

    (b) For or on account of an antecedent debt owed by Debtor to Irvine Trust before such transfer was made;

    (c) Made while Debtor was insolvent;

    (d) Made within ninety (90) days before the date of filing of Debtor's bankruptcy petition; and

    (e) That would enable Irvine Trust to receive more than Irvine Trust would receive if the case were a case under Chapter 7, the transfer had not been made, and Irvine Trust received payment of such debt pursuant to the provisions of Chapter 7.

41. Pursuant to 11 U.S.C. §§ 547 and 551, the Trustee is entitled to avoid any transfer of the Anini Road Residence effected by the Security Agreement and to preserve the same for the benefit of the estate.

42. By Amendment of Mortgage dated July 17, 2006 entered into between Debtor and Irvine Trust, Debtor purported to further mortgage the Anini Road Residence by agreeing with Irvine Trust that the debt secured by the Second

382710.01

11

Mortgage - Anini Road would be increased from $1 million to $2 million. The Amendment of Mortgage was recorded in the Bureau on July 31, 2006 as Document No. 2006-139537 ("Amendment of Second Mortgage").

43. The Amendment of Second Mortgage, if effective, constituted a mortgage to Irvine Trust of Debtor's interest in the Anini Road Residence to Irvine Trust made by Debtor in connection with and to perpetuate the scheme described in paragraph 27 above and with actual intent to hinder, delay or defraud his creditors.

44. Pursuant to 11 U.S.C. §§ 548 and 551, or pursuant to other avoidance powers granted the Trustee under the Bankruptcy Code, the Trustee is entitled to avoid any transfer of the Anini Road Residence to Irvine Trust effected by the Amendment of Second Mortgage and to preserve the same for the benefit of the estate.

## Count III – Kauai Lease and Loan, Ltd. Shares

45. Plaintiff realleges and incorporates by this reference the allegations contained in paragraphs 1 through 45 above.

46. By Stock Pledge Agreement dated as of October 2003, Debtor pledged Debtor's shares of common stock in Kauai Lease and Loan, Ltd. ("KLL") to Irvine Trust to secure Debtor's promissory note dated October 29, 2003 to Irvine Trust in the face amount of $1 million.

47. The October 29, 2003 promissory note to Irvine Trust was subsequently paid in full by Debtor.

48. In the Security Agreement, Debtor purported to re-pledge his KLL shares to secure other promissory notes executed by Debtor in favor of Irvine Trust, being Debtor's promissory notes dated October 9, 2003 ($1 million), October 20, 2004 ($1 million), July 18, 2005 ($500,000) and July 25, 2005 ($500,000).

49. On information and belief, Irvine Trust has not to date taken possession or control of any shares of Debtor in KLL and did not file any financing statement with respect to any security interest in Debtor's KLL shares until on or after October 6, 2006.

50. Any security interest which Irvine Trust might otherwise hold in Debtor's shares in KLL is avoidable by the Trustee under the provisions of 11 U.S.C. §§ 544 and/or 547, or pursuant to other avoidance powers granted the Trustee under the Bankruptcy Code.

## Count IV – Kapaa 382, LLC Proceeds

51. Plaintiff realleges and incorporates by this reference the allegations contained in paragraphs 1 through 51 above.

52. By Irrevocable Assignment of Proceeds dated October 2004, Debtor assigned to Irvine Trust the first $2 million in proceeds which Debtor might receive

from the business activities of Kapaa 382, LLC and/or KLL to secure certain of Debtor's promissory notes to Irvine Trust.

53. In the Security Agreement, Debtor purported to amend the Irrevocable Assignment of Proceeds so that such assignment secured the promissory notes described in paragraph 48 above.

54. On information and belief, Irvine Trust did not file any financing statement with respect to any security interest in the $2 million in proceeds granted it under the Irrevocable Assignment of Proceeds or the Security Agreement until on or after October 6, 2006.

55. Any security interest which Irvine Trust might otherwise hold in any amount payable to Debtor from Kapaa 382, LLC or KLL is avoidable by the Trustee under the provisions of 11 U.S.C. §§ 544 and/or 547, or pursuant to other avoidance powers granted the Trustee under the Bankruptcy Code.

WHEREFORE, the Trustee prays for judgment against the Defendants and each of them as follows:

## As to Count I

A. That the Court confirm that Uldricks holds 50% of his ownership interest in the Duffy Residence for Debtor.

B. That the Court enter an order avoiding any lien or security interest of Irvine Trust in the Duffy Residence on the grounds that Debtor's grant of any such

lien or security interest constituted a transfer avoidable by the Trustee under 11 U.S.C. § 547.

## As to Count II

C.   That the Court enter an order avoiding the transfer by Debtor of the Anini Road Residence to Debtor and his wife, Theresa Lull, as tenants by the entirety, on the grounds that such transfer constituted a fraudulent transfer avoidable by the Trustee under 11 U.S.C. § 548, or, in the alternative, that the Court enter an order determining that any and all interest which Theresa Lull may hold in the Anini Road Residence is subject to a constructive trust for the benefit of Debtor's creditors.

D.   That the Court enter an order avoiding any lien or security interest on the Anini Road Residence acquired by Irvine Trust under the Security Agreement on the grounds that Debtor's grant of any such lien or security interest was not effective because not joined in by Debtor's wife, Theresa Lull, or, in the alternative, on the grounds that the grant of any lien or security interest in the Anini Road Residence constituted a transfer avoidable by the Trustee under 11 U.S.C. § 547.

E.   That the Court enter an order avoiding any lien or security interest on the Anini Road Residence acquired by Irvine Trust under the Amendment of Second Mortgage on the grounds that Debtor's grant of any such lien or security

interest constituted a fraudulent transfer avoidable by the Trustee under 11 U.S.C. § 548.

## As to Count III

F. That the Court enter an order avoiding the transfer or grant by Debtor of any security interest in Debtor's shares in KLL on the grounds that any transfer of security interest to Debtor in such personal property constituted a transfer avoidable by the Trustee under 11 U.S.C. §§ 544 and/or 547.

## As to Count IV

G. That the Court enter an order avoiding the transfer or grant by Debtor of any security interest in Debtor's right to proceeds from the business activities of Kapaa 382, LLC or KLL on the grounds that any transfer of security interest to Debtor in such personal property constituted a transfer avoidable by the Trustee under 11 U.S.C. §§ 544 and/or 547.

## As to Counts I, II, III and IV

H. That the Trustee recover his costs incurred herein including reasonable attorneys' fees.

I. The Trustee have such other and further relief as the Court deems appropriate under the circumstances.

DATED: Honolulu, Hawaii; April 20, 2007.

_____
CUYLER SHAW
KEVIN HERRING
MIRANDA TSAI
Attorneys for
RONALD K. KOTOSHIRODO, Trustee