CASE NAME: JAMES WILLIAM LULL

BAP NOs: HI-07-1265-KuPaMk and HI-07-1270-KuPaMk (Consolidated)

Bk. NO: 06-00898    Adv. NO: 07-90017



PROOF OF SERVICE OF MANDATE

A certified copy of the attached judgment was sent to:

   CLERK

   U.S. BANKRUPTCY COURT

at 1132 Bishop St., Suite 250L

   Honolulu, HI 96813

on    1/10/08


By: Elaine Lewis
    Deputy Clerk

    Date: January 10, 2008

BAP NO. HI-07-1265-KuPaMk
HI-07-1270-KuPaMk
(Consolidated)
BK NO. 06-00898
ADV NO. 07-90017

In re: JAMES WILLIAM LULL

    Debtor

----------------------

PATTI K. IRVINE REVOCABLE TRUST DATED DECEMBER 21, 1992

    Appellant

v.

RONALD K. KOTOSHIRODO, Chapter 7 Trustee; JEFFREY L. ULDRICKS; THERESA LULL

    Appellee

FILED

DEC 20 2007

HAROLD S. MARENUS, CLERK
U.S. BKCY APP PANEL
OF THE NINTH CIRCUIT

## JUDGMENT

ON APPEAL from the United States Bankruptcy Court for the District of Hawaii.

THIS CAUSE came on to be heard on the record from the above court.

ON CONSIDERATION WHEREOF, it is ordered and adjudged by this Panel that the judgment of the Bankruptcy Court is ORDERED DISMISSED as moot, and the sale order and the amendment thereto are ORDERED VACATED.

FOR THE PANEL,

Harold S. Marenus,
BAP Clerk

BANKRUPTCY APPELLATE PANEL
OF THE NINTH CIRCUIT
A True Copy
Attest:

Harold S. Marenus, Clerk
1-10-08

FILED
DEC 20 2007

NOT FOR PUBLICATION

HAROLD S. MARENUS, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

UNITED STATES BANKRUPTCY APPELLATE PANEL

OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP Nos. HI-07-1265-KuPaMk |
| | HI-07-1270-KuPaMk |
| JAMES WILLIAM LULL, | (Consolidated) |
| Debtor. | Bk. No. 06-00898 |
| | Adv. No. 07-90017 |
| THE PATTI K. IRVINE REVOCABLE TRUST DATED DECEMBER 21, 1992, | |
| Appellant, | M E M O R A N D U M[1] |
| v. | |
| RONALD K. KOTOSHIRODO; Chapter 7 Trustee; JEFFREY L. ULDRICKS; THERESA LULL, | |
| Appellees. | |

Argued by Telephone and Submitted
on November 29, 2007

Filed - December 20, 2007

Appeal from the United States Bankruptcy Court
for the District of Hawaii

Honorable Robert J. Faris, Chief Bankruptcy Judge, Presiding

Before: KURTZ,[2] PAPPAS and MARKELL, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP R. 8013-1

[2] Hon. Frank Kurtz, Chief Bankruptcy Judge for the Eastern District of Washington, sitting by designation.

1    The Bankruptcy Court ordered the sale of property in which
2 the estate held a disputed 50% interest free and clear of liens,
3 with liens attaching to the sales proceeds. The order
4 authorizing the sale was based upon a stipulation between the
5 chapter 7[3] trustee and the co-owner of the property. The sale
6 order and an amendment thereto are appealed by a creditor to whom
7 the chapter 7 debtor irrevocably assigned his interest in the
8 property as security for a debt. On appeal, the creditor argues
9 that the court did not have authority to order the sale. During
10 the pendency of the appeal, the sale authorized by the order fell
11 through and did not close. For that reason, the issues on appeal
12 are moot. We dismiss the appeal as moot and vacate the sale
13 order and the amendment thereto.

**FACTS**

For nearly ten years James Lull and Jeffrey Uldricks were business partners. Uldricks appears to have been the senior partner, the partner with greater resources and access to credit for investment purposes. In some instances, Lull's interest in their common investments was undocumented. In Lull's words "...I'd never had anything happen that he didn't say was going to happen, so I trusted him."

As a result of his relationship with Uldricks, Lull was able to borrow money from the Patti Irvine Revocable Trust (Trust).

---

[3] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532 and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as revised by The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

-2-

In a series of transactions from October 9, 2003, to July 25, 2005, he borrowed $4,000,000 from the Trust. Of that sum, only $1,000,000 was repaid. Lull's default and Uldricks' relationship with the Trust are the subjects of pending state court litigation. One of the allegations in that lawsuit is that Uldricks, as the putative representative of the Trust, released a lien on property pledged to the Trust as collateral for Lull's indebtedness. Consequently, Lull was able to sell the property without paying the Trust.

This litigation involves a different piece of property, known as the Duffy property, located at 4030 Pali Moana Place, Kilauea, Kauai, Hawaii. On January 7, 2004, Lull loaned $250,000 to Richard Duffy, Bonnie Duffy and Darda Hollands. The debt was evidenced by a promissory note and secured by a mortgage. On July 12, 2004, Lull assigned the note and mortgage to Uldricks. When Ms. Hollands and the Duffys defaulted on the note, Uldricks nonjudicially foreclosed and in June of 2005, he acquired title to the property, subject to an existing first mortgage.

Although the record title to the property does not reveal that Lull retained any interest in the property, the parties agree he did. Lull retained an unrecorded one-half interest in the property, with each investor responsible for one-half of the carrying cost, primarily consisting of the substantial payments due on the first mortgage. In other words, they agreed to share the cost and split the profit. According to Uldricks, however, the agreement contained an additional condition - if Lull failed to pay his share of the carrying cost, he would forfeit his unrecorded interest in the property. The record does not reveal

whether Lull agrees with Uldricks' contention that he lost his interest in the Duffy place by failing to pay his share of the carrying cost.

After Uldricks foreclosed on the Duffy property, Lull assigned his interest in the property to the Trust as security for his loans. In the Loan and Security Agreement, the parties provided:

> Section 5. Assignment of Duffy Property Rights. In consideration of the loan, Lull does, **as security for repayment of the loan, hereby irrevocably assign to lender all of Lull's rights and interest** in and with respect to a piece of real property on the Island of Kauai, State of Hawaii, recently acquired in foreclosure from Richard Duffy, et al, in which Lull is a coinvestor with Jeffrey L. Uldricks. Lull authorizes lender to file and record a UCC I in order to secure this right. (emphasis added)

Significantly, the agreement is signed by Uldricks as representative of the Trust. Later, the Trust would argue that the security agreement's "irrevocably assign" language constituted an immediate and outright transfer of Lull's interest in the Duffy property to the Trust. Based upon the documents, which show an intent to create a secured rather than an ownership interest, this contention is difficult to sustain.

In December of 2006, Lull filed a petition for relief under chapter 7 of the Bankruptcy Code. Ronald K. Kotoshirodo was appointed to serve as chapter 7 trustee. Upon learning of Lull's interest in the Duffy property, he filed an adversary proceeding, alleging the UCC I was recorded within the preference period, and seeking to set aside the transfer to the Trust. Later, this preference action became the vehicle by which Uldricks sought to sell the property free and clear of liens and encumbrances.

-4-

At a deposition, Uldricks testified that Lull lost his
interest in the Duffy property shortly before he filed his
chapter 7 bankruptcy petition. According to Uldricks, Lull's
interest in the property terminated when Lull failed to make his
share of the payments on the first mortgage. He further
testified that his investment in the property was $281,857.56,
compared to Lull's investment of approximately $175,000.

        Approximately one month after his former partner filed for
bankruptcy protection, Uldricks found a buyer for the Duffy
property. He agreed to sell the property for $2,900,000.
Thereafter he obtained a preliminary title report that showed
Uldricks as the owner of the property, subject to a first
mortgage. The same title report revealed a number of title
issues, including litigation and the trustee's <u>lis pendens</u>, that
might have made closing the transaction difficult. For that
reason, Uldricks sought the assistance of the bankruptcy court
and filed a motion in the trustee's adversary proceeding to sell
the Duffy property free and clear of liens and encumbrances.

        Uldricks' motion brought immediate opposition from the other
parties in that litigation. The trustee opposed the sale because
the sale offered no benefit to the estate. The Trust also
opposed the sale, arguing that the bankruptcy court lacked
authority to order the sale because the estate had no interest in
the property, Lull's interest having been transferred to the
Trust. Additionally, the Trust asserted that the proceeds from
any sale of the property should remain with the court, until
Uldricks accounted to the Trust for his Trust-related activities.
In other words, while the Trust generally opposed the sale, it

1  indicated some interest in a sale that left Uldricks' share on
2  the table to satisfy the Trust's claims against him.
3       After considering the parties' various positions, the court
4  questioned it's authority to sell the property in which the
5  estate held a disputed 50% interest and expressed a reluctance to
6  order a sale opposed by the trustee. Additionally, the court
7  doubted that it should become involved in the dispute between the
8  Trust and Uldricks, which was currently being played out in state
9  court. Arguably the court's tentative ruling placed Uldricks in
10 a difficult position. The court would not approve the sale
11 unless the estate had an interest in the property and would
12 benefit from the sale. And the sale likely could not close
13 without a court order authorizing a sale. In response to these
14 obstacles, Uldricks entered into an agreement with the trustee.
15      Uldricks agreed to acknowledge the estate's 50% interest in
16 the Duffy property in exchange for the trustee's agreement to
17 join in his motion to sell the property and to allow him to
18 recover his monies directly from the sale proceeds. This
19 agreement cleared up two of the three obstacles to obtaining the
20 court's authorization for the sale: the interest of the estate in
21 the transaction and the support of the trustee. The third
22 obstacle, the opposition of the Trust, remained unresolved.
23      Apparently persuaded by the stipulation between Uldricks and
24 the trustee, the court ruled that the joint motion for the sale
25 free and clear of liens and encumbrances should be granted. The
26 order contained the following:

### S T I P U L A T I O N

- Defendant Uldricks and the bankruptcy estate are co-owners of the real property situated at 4030 Pali Moana Place, Kilauea, Hawaii (the "Real Property") with each owning a 50% interest;

- Defendant Uldricks shall have an allowed claim for any unreimbursed portion of James Lull's ("Debtor") 50% share of the carrying costs of the Real Property incurred by Defendant Uldricks from and after December, 2005, each of the Defendant Uldricks and the Trustee reserving their respective rights and positions, however, with respect to the issue of whether Defendant Uldricks' allowed claim is secured by the Real Property in whole or in part, or an unsecured claim; and

- Each of the Defendant Uldricks and the Trustee expressly reserves all other claims and rights that each has or may have against the other.

In authorizing the sale, the court indicated that only the estate's interest in the property would be sold free and clear of liens, with liens attaching to the estate's share of the proceeds. The court opined that it did not have authority to order a sale of Uldricks' interest free and clear of liens. In the court's opinion, this left the Trust and any other creditor of Uldricks free to take action against Uldricks' share. In effect, the court denied the Trust's request that Uldricks' share of the sale proceeds remain under court control until Uldricks accounted for his Trust-related financial activities and authorized the disbursement of one-half of the net sale proceeds to Uldricks.

The order authorizing the sale was entered on June 27, 2007. The same day, the Trust appealed. The next day, the trustee filed a motion to amend the sale order, to include a finding that the trustee was selling the Duffy property to a good faith

-7-

purchaser. The Trust opposed this motion arguing that the appeal divested the court of jurisdiction to enter an order that might affect the outcome of the Trust's appeal. In response, the trustee argued that the Trust's hasty filing of the notice of appeal did not impair the authority of the bankruptcy court to entertain a timely motion under Fed. R. Civ. P. to amend or add to the findings of fact or conclusions of law. The court accepted the trustee's argument and amended its order to include a finding that the buyers of the real property were purchasing the property in good faith. The amended order was entered on July 5, 2007. The Trust appealed on the same day.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 157(b)(2)(F), and (N). This panel has jurisdiction pursuant to 28 U.S.C. § 158.

**ISSUE**

The Trust appealed both the original and amended orders authorizing a specific sale. After the appeal was filed, the sale failed to close. The Trust offered to withdraw the appeal, provided the other parties agreed to vacate the sale orders. Uldricks refused, explaining that he was considering legal action against the proposed purchaser for damages. Thereafter the parties submitted the following stipulation to this court for approval:

> ...the amended sale order appeal shall be
> dismissed and following issues shall be deemed

| | moot for purposes of this appeal: |
|---|---|
| 1 | |
| 2 | A. Whether the U.S. Bankruptcy Court for the |
| 3 | District of Hawaii had jurisdiction to rule on the |
| 4 | Trustee's Motion to Approve Sale of Real Property |
| 5 | Situated at 4030 Pali Moana Place, Kilauea, Kauai, |
| 6 | Hawaii, Free and Clear of Liens and Encumbrances |
| 7 | after the June 28, 2007 Notice of Appeal was |
| 8 | filed; |
| 9 | B. Whether the U.S. Bankruptcy Court for the |
| 10 | District of Hawaii erred in applying the standard |
| 11 | of when a Motion to Amend Order can be granted |
| 12 | after a Notice of Appeal of the Order is filed; |
| 13 | and |
| 14 | C. Whether the U.S. Bankruptcy Court for the |
| 15 | District of Hawaii erred when it found that there |
| 16 | was sufficient basis for a finding of "good faith" |
| 17 | in the record even though it was not initially |
| 18 | requested by the Trustee or Uldricks in the |
| 19 | underlying Motion or specified in the Order. |

The issue on appeal is whether the remaining issues are moot.

**STANDARD OF REVIEW**

Initially, the plaintiff bears the burden of establishing that the court has jurisdiction. Fed. R. Civ. P. 12(b)(1). The court, in turn, has an independent obligation to ensure that it is acting within the scope of it's jurisdictional authority, which includes the obligation to consider the possibility of mootness. In re Burrell, 415 F.3d 994, 997 (9th Cir. 2005). When a case

becomes moot on appeal, the appellate court usually vacates the decision under review. The United States v. Munsingwear, Inc., 340 U.S. 36, 39, 71 S.Ct. 104, 95 L.Ed. 36 (1950).

## DISCUSSION

Does the fact that the sale fell through render all issues raised in this appeal moot? The appeal is moot if no live controversy remains at the time the Bankruptcy Appellate Panel hears it. GTE Cal., Inc. v. FCC, 39 F.3d 940, 945 (9th Cir. 1994). "Mootness is a jurisdictional question because the court is not empowered to decide moot questions or abstract propositions; our impotence to review moot cases derives from the requirement of Article III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy." North Carolina v. Rice, 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed. 2d 413 (1971). In other words, an appeal is moot when affirming the decision "would ostensibly require something to be done which has already taken place," and a reversal of the decision "would ostensibly avoid an event which has passed beyond recall." Brownlowb v. Schwartz, 261 U.S. 216, 217-8, 43 S.Ct. 263, 67 L.Ed. 620 (1923). Consequently, if an appeal becomes moot while pending, it must be dismissed. In re Pattullo, 271 F.3d 898, 900 (9th Cir. 2001).

In this case, the Trust asks us to invalidate the sale order because the court lacked authority to order a sale of the property. The Trust also asks the panel to rule that the Trust and Uldricks are co-owners of the Duffy property and that the

Trust is entitled to the remedy of an accounting before any sale proceeds will be distributed.

In the briefs, only the trustee addresses the issue of mootness. He concedes that most of the issues regarding the sale are unique to the sale and moot. The one issue on appeal that the trustee believes remains alive is whether Lull made an outright conveyance to the Trust of his interest in the Duffy property. The trustee argues that this issue is not moot because efforts are being made to find a new buyer. If not resolved, the trustee contends that this issue will again arise when a new buyer is found and an order authorizing the sale is sought.

The mootness rule is designed to prevent the court from offering advisory opinions. In our legal system, the trial court gets the first opportunity to be right or wrong about a disputed matter. There are four generally recognized exceptions to the mootness doctrine. They are:

(1) The issue is a wrong capable of repetition yet evading review;
(2) There are secondary or collateral injuries;
(3) The appellee or defendant voluntarily stops the allegedly illegal practice but is free to resume it at any time; and
(4) The action is a properly certified class action suit.

In re Burrell, 415 F. 3d 994, 998 (9th Cir. 2005). The trustee appears to be arguing the first exception. Stated differently, he contends that the court's error will be repeated and escape review.

The Trust maintains that there was an absolute assignment of Lull's interest in the Duffy property and, as a consequence, Lull had no interest in the property at the time he filed his

-11-

bankruptcy petition. The trustee disagrees. On appeal, the Trust offers sparse authority for it's position other than the language of the document. By contrast, the trustee relies upon case law and statutory authority, which provides that the transfer of an interest in real property made as security for performance of another act does not pass title. Haw. Rev. Stat. §506-1(a) (2007) and <u>Makuakane v. Tanigawa</u>, 443 P.2d 153 (Hawaii 1968). At the hearing on the motion to sell the property, the court did not specifically address this issue. The court appeared to regard the issue as one that should be considered after the property was sold. When the court ordered the sale, the court avoided ruling on the dispute between Uldricks and the Trust.

The trustee's issue does not fall within "capable of repetition yet evading review" exception. In <u>Weinstein v. Bradford</u>, 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed. 2d 350, (1975), the court held that the "capable of repetition yet evading review" doctrine is limited to situations in which the following two circumstances are simultaneously present: (1) the challenged action was in duration too short to be fully litigated prior to cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." <u>Id</u>. Unless both prongs of the test are met, the case will not escape mootness on this ground. <u>Id</u>. Here, there is no reason why the trustee could not raise this issue before the court prior to any sale. In fact, the issue should be resolved before the court orders a sale. <u>Darby v. Zimmerman (In re Popp)</u>, 323 B.R. 260, 268-71 (9th Cir. BAP 2005) (holding the court should not authorize sale of real property free and clear of

all liens, without first resolving disputed questions whether the debtor, and chapter 7 estate, had any interest in the property).

The other issues raised by this appeal do not survive the mootness test. The Trust argues in it's brief that the Trust and Uldricks are co-owners of the Duffy property, resulting in a fiduciary relationship that requires Uldricks to account to the Trust for his Trust-related activities before sales proceeds should be released to him. As previously stated, the court was reluctant to take up the dispute between two creditors when that issue was pending in another court. The court, however, did express some doubt about it's ability to order any kind of escrow of Uldricks' share of the sale proceeds. At any rate, this issue is moot because the sale fell through and there are no proceeds to hold pending an accounting.

**CONCLUSION**

We conclude that this appeal is moot. When a decision becomes unreviewable during an appeal, the decision is usually reversed or vacated. <u>Munsingear</u> 340 U.S. at 39, and <u>U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship</u>, 513 U.S. 18, 25 n.3, 115 S.Ct. 386, 130 L.Ed. 2d 33 (1994). Accordingly, we dismiss the appeal and vacate the sale order and the amendment thereto.

```
              U.S. Bankruptcy Appellate Panel
                   of the Ninth Circuit
         125 South Grand Avenue, Pasadena, California 91105
            Appeals from Central California   (626) 229-7220
            Appeals from all other Districts  (626) 229-7225
```

NOTICE OF ENTRY OF JUDGMENT

BAP No. HI-07-1265-KuPaMk & HI-07-1270-KuPaMk

RE: JAMES WILLIAM LULL

A separate Judgment was entered in this case on __12/20/07_____.

BILL OF COSTS:

Bankruptcy Rule 8014 provides that costs on appeal shall be taxed by the Clerk of the Bankruptcy Court. Cost bills should be filed with the Clerk of the Bankruptcy Court from which the appeal was taken.
9th Cir. BAP Rule 8014-1

ISSUANCE OF THE MANDATE:

The mandate, a certified copy of the judgment sent to the Clerk of the Bankruptcy Court from which the appeal was taken, will be issued 7 days after the expiration of the time for filing a petition for rehearing unless such a petition is filed or the time is shortened or enlarged by order. See Federal Rule of Appellate Procedure 41.

APPEAL TO COURT OF APPEALS:

An appeal to the Ninth Circuit Court of Appeals is initiated by filing a notice of appeal with the Clerk of this Panel. The Notice of Appeal should be accompanied by payment of the $455 filing fee and a copy of the order or decision on appeal. Checks may be made payable to the U.S. Court of Appeals for the Ninth Circuit. See Federal Rules of Appellate Procedure 6 and the corresponding Rules of the United States Court of Appeals for the Ninth Circuit for specific time requirements.

CERTIFICATE OF MAILING
-------------------------------------

The undersigned, deputy clerk of the U.S. Bankruptcy Appellate Panel of the Ninth Circuit, hereby certifies that a copy of the document on which this certificate appears was transmitted this date to all parties of record to this appeal.

By: Elaine Lewis

Deputy Clerk: December 20, 2007

*[signature]*